ZEIGLER, APPELLEE, *v.* VILLAGE OF SYCAMORE ET AL., APPELLANTS.

(No. 16-76-9—Decided February 11, 1977.)

*Messrs. Stansberry, Schoenberger & Scheck,* for appellee.

*Mr. Forrest H. Bacon,* for appellants.

GUERNSEY, J. Plaintiff Daniel L. Zeigler filed his complaint in the Court of Common Pleas of Wyandot County alleging, in effect, that he and the defendants, the Village of Sycamore and its mayor, entered into a written agreement whereby plaintiff was employed as the village marshal for a period of two years from and after April 1, 1974, at the sum of $7,700 for the first year and $8,200 for the second year; that defendants have refused to let plaintiff work since November 30, 1974, and have sent him a notice of termination; that defendants by their conduct have waived any statutory residence requirement pertaining to the office of constable; and that plaintiff is entitled to a judgment of reinstatement and back pay or to a judgment for $10,766.68 which remains due under the contract. Defendants answered, denying performance of the contract by the plaintiff and alleging that plaintiff failed to maintain his residence in the village as required by statute.

It appears undisputed in evidence that plaintiff was appointed constable by the mayor of the village by and with the consent of council, that he had completed his probationary period of service, and that during the first week of October 1974, he moved his residence from the village. It further appears that the minutes of the council of the village included the following, relating to their meetings on the indicated dates:

August 27, 1974. "Dan Zeigler joined the meeting and wanted to know if he could be Marshal and move to the country—possible in Seneca County. Council showed no objection to this but wants consent of the Wyandot County Sheriff on the legality."

September 10, 1974. "There was another discussion on Mr. Zeigler's moving to Seneca County. Mayor Hannam will check with Mr. Bacon [the village solicitor]."

October 8, 1974. "Mr. Zeigler joined the meeting and discussed his moving into Seneca County. Council decided

to table this until more information is obtained. His schooling has not yet been paid for but Mayor Hannam will look into this."

November 13, 1974. "The purpose of the meeting was to discuss the police situation. Mr. Zeigler has moved to Seneca County and cannot legally be a policeman for the Village of Sycamore. By mutual agreement the council agreed to release Mr. Zeigler effective November 30."

It was also undisputed that the plaintiff was advised of the action of council on November 13, 1974, and that at no time did the village council ever adopt an ordinance waiving any residency requirement otherwise imposed by law. The cause was tried and submitted to the jury primarily on the issue of whether residency in the village had been waived, and a verdict was rendered upon which a judgment was rendered against the village in the amount of $10,700. It is from this judgment that both defendants appeal assigning error in four particulars:

"1. The defendant breached the contract by failing to follow the laws of Ohio requiring him to maintain residency in the village in which he was marshal.

"2. It is the rule in Ohio that a public officer or a public general employee holds his position *ex lege* and not *ex contractu*, and thus a marshal may be removed at any time.

"3. Pursuant to R. C. 737.15 the only procedure by which the village could waive the residency requirement for a marshal was by a duly enacted ordinance, and since no such ordinance was passed, plaintiff cannot claim that the village waived the residency requirement.

"4. The judge erroneously instructed the jury as to the issue of damages since plaintiff did not demand a jury trial as to that issue."

R. C. 737.15, the only statute dealing with the appointment of a village marshal, reads in pertinent part as follows:

"Each village shall have a marshal, designated chief of police, appointed by the mayor with the advice and consent of the legislative authority of the village, who need

not be a resident of the village at the time of his appointment but shall become a resident thereof within six months after his appointment by the mayor and confirmation of the legislative authority unless such residence requirement is waived by ordinance, and who shall continue in office until removed therefrom as provided by section 737.171 of the Revised Code."

R. C. 731.13 prescribes that the compensation of all officers and employees of the village be fixed by the legislative authority thereof except as otherwise provided by law. It is thus not contemplated by these statutes that an employment contract be executed by and between the village and its marshal, and is contemplated that his appointment shall be for an indefinite period which cannot be terminated *by action of the village, its officers, or legislative authority* except under the provisions of R. C. 737.-171. Indeed, the "contract" here involved may be accepted only as evidence of confirmation by council of the appointment of the marshal and the fixing of his compensation for yet another reason, for under the provisions of R. C. 731.14 all "contracts made by the legislative authority of a village shall be executed in the name of the village and signed on its behalf by the mayor and clerk." The document here involved was signed by the mayor but not by the clerk.

The plaintiff tried his case in the lower court and maintains in this court that the requirement of R. C. 737.15 that the marshal maintain his residence in the village was waived by action (or inaction) of the members of council or that by their action (or inaction) they are estopped from asserting this requirement against the plaintiff. In *Hubbard* v. *Norton* (1875), 28 Ohio St. 116, it is recognized that when a city, with knowledge of the fact that a construction contract could be held invalid, proceeded to permit and exact full performance by the contractor, it must be held that the city has waived the right to assert the invalidity. That case thus established that on its facts a municipality is capable of accomplishing a waiver. Nevertheless, in the case of *Lancaster* v. *Miller* (1898), 58 Ohio

St. 558, the Supreme Court held that a municipality is not estopped by the acts of its officers from setting up as a defense to an action on a contract that a stautory limitation had not been complied with. At page 575 of his opinion Judge Bradbury stated:

"The corporation should not be estopped by the acts of its officers to set up these statutes in defense to contracts made in disregard of them. It would be idle to enact those statutes, and afterward permit their practical abrogation by neglect or other misconduct of the officers of the municipality. If such effect should be given to such acts of municipal officers it would defeat the operation of the statutes. The strict enforcement of these provisions may occasionally cause instances of injustice; it is possible that municipal bodies may secure benefits under a contract thus declared void and refuse to make satisfaction. In the nature of things, however, these instances will be rare. Those who deal with public agencies entrusted with the management of municipal affairs, usually experience liberal treatment. Such agencies are not stimulated to acts of injustice by cupidity. Self-interest, that great motive to overreaching, is absent. If, however, cases of hardship occur they should be attributed to the folly of him who entered into the invalid contract. The gateways of municipality prodigality should not be left wide open, because an attempt to narrow them may cause an occasional instance of seeming hardship."

In reality the plaintiff here is attempting to claim two waivers; one, the waiver of the statutory requirement that he reside in the village by failure to act on his request, and, two, the waiver of the statutory requirement that waiver of residence could be accomplished only by ordinance of the legislative authority of the village.

Before its amendment in 1965 (131 Ohio Laws 276), R. C. 737.15 required the village marshal to be "an elector thereof" which, of course, included a requirement that he be a resident of the village (130 Ohio Laws 242). The 1965 amendment thus liberalized this mandate by permitting the legislative authority, pursuant to its unbridled

discretion, to waive "such residence requirement * * * by ordinance."

R. C. 731.09 prescribes that the "legislative power of each village shall be vested in, and exercised by, a legislative authority, composed of six members * * *." That statute does not say that the legislative power shall be exercised by six individuals who are councilmen but by "*a legislative authority, composed of six members.*" (Emphasis added.) It follows that legislative action must be the result of affirmative joint or composite action by a quorum of the six members and not the result of the failure of individual councilmen to take action.

We are thus of the opinion that the provision of R. C. 737.15 that a waiver of the residence requirement for a village marshal be by ordinance is itself a mandatory requirement which cannot be waived and that a village and its mayor are not estopped from raising such mandatory requirement in the defense of a suit claiming waiver of the residence requirement.

The plaintiff asserts that the defendants did not raise the issue of the assertion that plaintiff could not be employed by contract during trial and cannot do so here. However, any rights the plaintiff had under his relationship with the village could not rise above statutory authorizations. The issue was thus fundamental to plaintiff's right of recovery and implicit throughout the trial of his action, thus not being first raised on appeal.

Plaintiff then contnds that his employment could not be terminated except by removal under the provisions of R. C. 737.171, which removal provisions were not complied with. That section prescribes in its first paragraph the situations to which it is applicable:

"When the mayor of a village has reason to believe a duly appointed marshal * * * of the village has been guilty of incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, or any other acts of misfeasance, malfeasance, or nonfeasance in the performance of his official duty, he shall file with the legislative

authority of the village written charges against such per-. son setting forth in detail the reason therefor and immediately serve a true copy thereof upon the person against whom they are made.''.

It will be noted that all of the items set forth as grounds for written charges relate to the performance of duty and not to the qualifications for appointment set forth in R. C. 737.15, including residence and the passing of a physical examination. Also, the statute contemplates removal initiated by the mayor and does not purport to cover termination of appointment and employment initiated by the marshal. In our opinion, the removal by the marshal of his residence from the village constituted. *action by him* disqualifying him to continue in such capactity and, by reason thereof, a forfeiture and abandonment of his appointment.

It would also appear from the plaintiff's brief that he contests the statutory residence requirement. It is characteristic of the position of village marshal that to be effective he must be available and it is conceded throughout the record that the plaintiff, if not actually performing the duties of his office, was required to be available on a twenty-four hour basis to perform those duties. The residence requirement is obviously a legislative determination of statewide application to insure a marshal's availability unless the village legislative authority, in its sole and unbridled discretion, should determine by ordinance that the situation existing therein does not require the marshal to be a resident. The statutory requirement of residence is entirely reasonable, related logically to the position, and we perceive no limitation, constitutional or otherwise, to invalidate same.

The defendants make claim of an erroneous instruction to the jury but it does not appear from the record that a timely or proper objection was made thereto and such issue is not, therefore, before us for review.

Accordingly, to the extent that the first assignment of error constitutes a claim that the plaintiff forfeited his office we find the same well taken, as we also do the sec-

ond and third assignments of error. The fourth assignment of error we find not well taken.

Although we have not, and do not rely upon such, we deem it appropriate to observe at this point that *estoppel in pais* arises from the acts and declarations of a person by which another is induced to alter his position injuriously to himself. The record here indicates, with particular reference to the council meetings and to plaintiff's conversations with the mayor and councilmen at other times, that plaintiff repeatedly brought up the matter as to what council was going to do about his residence, that he continuously pushed for action, and that he did not rely on inaction.

By reason of the assignments of error which we have found well taken and which errors we hereby find prejudicial to the defendants, the judgment of the trial court must be reversed and this court, rendering the judgment that court should have rendered, must render a final judgment for the defendants.

*Judgment reversed.*

MILLER, P. J., and COLE, J., concur.